IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CARLOS RAY KIDD | § | |
| v. | § | CIVIL ACTION NO. 6:09cv342 |
| BRAD LIVINGSTON, ET AL. | § | |

## MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff Carlos Kidd filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the Texas Department of Criminal Justice, Correctional Institutions Division. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). As defendants, Kidd named TDCJ Executive Director Brad Livingston, then-Correctional Institutions Division director Nathaniel Quarterman, Chief of the State Classification Committee Larry LeFlore, Region II Director William Stevens, Michael Unit Warden Loyd Massey, Assistant Warden Baker, Assistant Warden Dewberry, Major Jimmy Bowman, Captain James Danheim, Lt. Olin Statham, officer Warren, officer Tippen, officer Godwin, and a former officer named David Larsen.

Kidd filed a previous lawsuit, concerning an alleged sexual assault inflicted upon him by Larsen. A settlement was reached in this prior lawsuit. Kidd testified that the present case grew out of the prior one.

As part of the settlement agreement, Kidd said, he was transferred to the Michael Unit. He said that he had been suffering harassment, but that this harassment continued at the Michael Unit. Officer Tippen had been one of those harassing him. Kidd said that he filed grievances putting the supervisory officials on notice of the problem, and an offender protection investigation (OPI) was done.

1

On June 4, 2008, Kidd said, he went to a classification hearing with Bowman, Danheim, Statham, and Warren. Officer Godwin had escorted Kidd to the hearing and was present as well. Kidd told the officers that Tippen had been harassing him, and they asked him if anything physical had happened to him. When Kidd said no, the officers told him that they could not act on threats alone, and that he should file a complaint after something did happen to him. Kidd testified that the officers did not take any precautions or act to separate him from Tippen.

Kidd stated that Godwin, the escorting officer, worked with Tippen. A couple of days after the hearing, Kidd said, Tippen came to his cell early in the morning and banged on the door. Tippen said that he knew that Kidd had been "snitching" and that he had a surprise for him. Later that day, Tippen was passing out food trays and opened the slot on Kidd's cell door. Kidd said that when the slots are opened, inmates generally look through it. When he did so, Tippen hit him in the face with the slot key, which is a metal bar about two to two and a half feet long. Kidd said that the blow knocked him backwards onto the floor. Tippen told him to "eat steel, you f*ing snitch" and closed the door slot.

Kidd said that he felt blood on his face and called out to Godwin, who was down on One Row, that he had been assaulted by Tippen and was injured, and needed to go to the medical department. When he first called out, he said, Godwin acknowledged him, but when he said that he had been assaulted and needed medical care, Godwin ignored him. When shift change came about thirty minutes later, Kidd said, the officers on the next shift took him to the infirmary, where he received medical care for his injuries.

Kidd complained that even though an offender protection investigation had been opened regarding his complaints against Tippen, the prison officials still kept him in the same housing area with Tippen. After free-world persons contacted TDCJ authorities on his behalf, he said, he was finally transferred to the Darrington Unit.

Kidd stated that he sued the unit wardens and the TDCJ upper echelon officials on a theory of supervisory liability, in that they had failed to train and supervise their subordinates. He

said that Quarterman, Livingston, and LeFlore had notice of the situation because of letters which he and other persons, including the ACLU and a prisoners rights organization from California, had written. He stated that the officers present at the June 4 meeting failed to take any action to protect him and in fact told him that "something physical" had to happen to him before they would do anything.

Kidd also sued former TDCJ officer David Larsen, explaining that although Larsen no longer worked for TDCJ, he was still involved. He said that he had received death threats from the Aryan Brotherhood prison gang in the form of written notes which made clear that Larsen was in close touch with the gang; one of these notes referred to the settlement in the prior case and stated that Larsen was not going to pay and that the gang was going to kill Kidd.

Nurse Kathy Grey, a TDCJ nurse also present at the hearing, testified that according to the medical records, Kidd was seen in the clinic on June 7, 2008, with injuries to his face, including a black eye and swelling of his cheek. He was referred to a medical provider and X-rays were done, which showed no fracture. Kidd said that he had experienced problems with his vision ever since this incident took place.

The grievance records show that Kidd filed a grievance about this incident and was told that the Office of the Inspector General had declined to open a case. He states in another grievance that he reported the abuse to Bowman, Danheim, and Statham, but that they took no action because Tippen had denied the allegations. The response to this grievance was that the alleged use of force by Tippen had already been addressed and that his allegations of threats from staff and inmates were forwarded to the Safe Prisons Program, but that Kidd refused to cooperate with an investigation by Lt. Shead. In a later grievance, Kidd says that he did cooperate, by turning over the death threat he had received, but the fact that he did not know who had written the note did not justify prison officials in taking no action to protect him. He also said that Major Bowman interviewed him about his allegations and told him that he could not guarantee Kidd's safety even if Kidd gave him the names of the individuals who had been threatening him.

<u>Legal Standards and Analysis</u>

Kidd states that Officer Tippen assaulted him with a metal bar, and that Officer Godwin refused him assistance after it happened. He also indicates that Godwin may have told Tippen about the committee hearing at which Kidd complained about Tippen. Kidd's claims against Tippen and Godwin require further judicial proceedings.

Kidd says that he notified Brad Livingston, Nathaniel Quarterman, and Larry LeFlore of the problems which he had, through letters and grievances, but that these officials did not take the actions which Kidd deemed appropriate. At the hearing, Kidd conceded that his claims against these persons was based upon supervisory liability, but said that he could show that they were on notice of the danger he faced, because Kidd had filed grievances and the ACLU had written letters asking that he be moved.

The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. <u>Williams v. Luna</u>, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. <u>Thompkins v. Belt</u>, 828 F.2d 298 (5th Cir. 1987).

The fact that Kidd and others wrote letters to the Executive Director, the Director of TDCJ-CID, and the chairman of the State Classification Committee is not enough by itself to show that any of these persons should be liable to him. Kidd has not shown that Livingston, Quarterman, or LeFlore were personally involved in a constitutional deprivation, that wrongful conduct by any of them was causally connected to a constitutional deprivation, or that they implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation. The fact that they did not take the action on Kidd's grievances which Kidd thought appropriate does

not show that a constitutional violation took place. Nor does every letter or grievance written by an inmate to the Executive Director of TDCJ or the Director of the Correctional Institutions Division of TDCJ give rise to personal liability on the part of that official if the letter is not acted upon in the manner which the inmate believes appropriate. Kidd has failed to show any basis for liability on the part of Livingston, Quarterman, or LeFlore, and so his claims against them are without merit.[1]

Similarly, Kidd stated that he sued the unit wardens, Massey, Baker, and Dewberry, because they failed to train or supervise their subordinates, referring specifically to the officers who sat on the classification committee. The Fifth Circuit has held that in a case involving failure to train or supervise, the Plaintiff must show (1) an actual failure to train or supervise, (2) a causal connection between this failure and the violation of his rights, and (3) that the failure amounted to gross negligence or deliberate indifference. Doe v. Taylor Independent School District, 15 F.3d 443, 452-53 (5th Cir. 1994); Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986); Bowen v. Watkins, 669 F.2d 979, 988 (5th Cir. 1982).

In applying these factors, the Fifth Circuit has stated that absent a supervisor's overt personal participation in the events giving rise to the claim, a plaintiff raising a claim of failure to train must show that the supervisor actually failed to train or supervise the subordinate official, a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and that the failure to train or supervise amounted to deliberate indifference. Mesa v. Prejean, 543 F.3d 264, 274 (5th Cir. 2008), citing Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). The Court went on to observe that proof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a

_____

[1]Kidd's primary request for relief in this case is for a transfer out of state or into federal custody. As a general rule, the federal courts lack authority to order such a transfer, unless extraordinary circumstances exist. In the event that the resolution of this case reveals such relief to be appropriate, Livingston may be reinstated in the case as a defendant for the sole purpose of effectuating such relief.

violation of constitutional rights.  <u>Mesa</u>, 543 F.3d at 274, *citing* <u>Burge v. St. Tammany Parish</u>, 336 F.3d 363, 370 (5th Cir. 2003).

In the present case, Kidd has offered nothing beyond speculation and conjecture to show an actual failure to train or supervise.  Nor has he shown a causal link between the asserted failure to train and a constitutional violation, or that the alleged failure to train or supervise amounted to deliberate indifference.  He acknowledges that a classification hearing was held, one or more offender protection investigations were completed, and he was interviewed by Major Bowman on a separate occasion.  Furthermore, Kidd has not shown that the unit wardens were personally involved in a constitutional violation, that wrongful conduct by the wardens was causally connected to a constitutional deprivation, or that they implemented constitutionally deficient policies which were the moving force behind a constitutional deprivation, his claims against the wardens are without merit.

Kidd also sued the regional director, William Stevens, saying that Stevens had supervisory liability over the wardens.  Even assuming that this is correct, Kidd has shown no basis for supervisory liability on the part of Stevens.  He has not shown that Stevens was personally involved in a constitutional deprivation, that wrongful conduct by Stevens was causally connected to a constitutional deprivation, or that Stevens implements constitutionally deficient policies which were the moving force behind a constitutional deprivation.  In addition, Kidd has not shown that the wardens committed any constitutional violations, and Stevens cannot be held responsible under supervisory liability where there was no primary liability by those whom he supervised.  <u>Gibbs v. King</u>, 779 F.2d 1040, 1046 n.6 (5th Cir.), *cert. denied* 476 U.S. 1117 (1986) (absent primary liability, there can be no supervisory liability).  His claim against Stevens is without merit.

Next, Kidd sues the officials who heard his life endangerment complaint, including Major Bowman, Captain Danheim, Lt. Statham, and Officer Warren.  He sets out his complaint as follows:

On June 4, 2008, Plaintiff had a life endangerment hearing before defendants Major Bowman, Captain Danheim, Lt. Statham, and CO V Warren, holding administrative segregation committee. Defendant Godwin was also present during this hearing. Plaintiff Kidd explained to the defendants that he was being threatened and harassed by the majority of the inmates, and several prison staff, because of the rapes by Jiminez and Defendant Larsen. Plaintiff explained that one guard in particular, CO V Tippen, had been denying Plaintiff recreation, showers, and meals, saying 'I don't feed snitches.' Defendant Tippen as well harasses and threatens Plaintiff because of the Coffield incident, saying that he would teach Plaintiff a lesson for snitching on officers. Tippen has also threatened to let other inmates in Plaintiff's cell to assault, rape, or kill Plaintiff. Plaintiff expressed to defendants his great concern for his life and safety and requested protection.

Defendants denied to provide Plaintiff with any protection because 'nothing physical' has happened to Plaintiff, and defendants stated that they did not act on verbal threats alone. Therefore defendants denied Plaintiff any protection, and as is noted on the administrative segregation review [form], section E, defendants wrote "remain current status," meaning "no action taken."

The Fifth Circuit has held that prison officials have a duty to protect inmates from violence at the hands of other prisoners; however, not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation. Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir. 1995). The plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of mind is one of "deliberate indifference" to the inmate's health or safety. Horton, 70 F.3d at 401, *citing* Farmer, 114 S.Ct. at 1977.

There is no concise definition of what types of prison conditions pose a "substantial risk of serious harm" under the Eighth Amendment. Instead, the Fifth Circuit said, this component of the test must be examined conceptually, making sure to be responsive to "contemporary standards of decency." The Court must consider "whether society considers the risk...to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Horton, 70 F.3d at 401, *citing* Helling v. McKinney, 113 S.Ct. 2475 (1993). Prison authorities must protect not only against current threats, but also must guard against "sufficiently imminent dangers" that are likely to cause harm "in the next week or month or year." Horton, 70 F.3d at 401. In this regard, the Supreme Court has explained that "a remedy need not await a tragic event." Helling v. McKinney, 509 U.S. 25, 33 (1993).

In this case, Kidd testified that he told the committee that he faced an imminent danger but was told in effect that he did have to await a "tragic event" before any action would be taken. Kidd's claims against the officers on the committee, Major Bowman, Captain Danheim, Lt. Statham, and Officer Warren, require further judicial proceedings.

Finally, Kidd sues former TDCJ officer David Larsen, saying that Larsen was still involved through his connection with the Aryan Brotherhood. He points to the note which he received, allegedly from the Aryan Brotherhood, which says that "now you think Dave [Larsen] is going to pay up - he ain't going to give you s***!"

Larsen was not an employee of TDCJ at any time that Kidd was at the Michael Unit; court records show that Larsen's employment ceased prior to the settlement in the previous lawsuit. The Fifth Circuit has held that in order to maintain a claim under Section 1983, a plaintiff must show that he has been deprived of a right secured by the Constitution, laws, or treaties of the United States by a person acting under color of state law. Daniel v. Ferguson, 839 F.2d 1124 (5th Cir. 1988). In this case, even assuming that Larsen has ties to the Aryan Brotherhood prison gang, and that he is retaliating against Kidd through the gang, Kidd has failed to show that Larsen is acting under color of state law in doing so. Nor has Kidd offered anything to show that Larsen himself is actually involved; the mere fact that the former officer was apparently mentioned in a note does not show that Larsen had any knowledge of it. Kidd's claim against Larsen is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Kidd's claims against Brad Livingston, William Stevens, Nathaniel Quarterman, Larry LeFlore, Loyd Massey, Warden Baker, Dwayne Dewberry, and David Larsen lack any arguable basis in law and fail to state a claim upon which relief may be granted. Consequently, these claims may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993).

ORDERED that the Plaintiff's claims against Brad Livingston, William Stevens, Nathaniel Quarterman, Larry LeFlore, Loyd Massey, Warden Baker, Dwayne Dewberry, and David Larsen are hereby DISMISSED with prejudice as frivolous. It is further

ORDERED that these above-named Defendants are hereby DISMISSED as parties to the lawsuit. The dismissal of these claims and parties shall have no effect upon the remaining claims and parties in the case. Finally, it is

ORDERED that the dismissal of these claims and parties shall not count as a strike for purposes of 28 U.S.C. §1915(g).

**So ORDERED and SIGNED this 26th day of May, 2010.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE