IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CARLOS RAY KIDD | § | |
| v. | § | CIVIL ACTION NO. 6:09cv342 |
| BRAD LIVINGSTON, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Carlos Kidd filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the Texas Department of Criminal Justice, Correctional Institutions Division. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). As defendants, Kidd named TDCJ Executive Director Brad Livingston, then-Correctional Institutions Division director Nathaniel Quarterman, Chief of the State Classification Committee Larry LeFlore, Region II Director William Stevens, Michael Unit Warden Loyd Massey, Assistant Warden Baker, Assistant Warden Dewberry, Major Jimmy Bowman, Captain James Danheim, Lt. Olin Statham, officer Warren, officer Tippen, officer Godwin, and a former officer named David Larsen.

Kidd filed a previous lawsuit, concerning an alleged sexual assault inflicted upon him by Larsen. A settlement was reached in this prior lawsuit. Kidd testified that the present case grew out of the prior one.

As part of the settlement agreement, Kidd said, he was transferred to the Michael Unit. He said that he had been suffering harassment, but that this harassment continued at the Michael Unit. Officer Tippen was one of those persons who was harassing him. Kidd said that he filed grievances putting the supervisory officials on notice of the problem, and an offender protection investigation (OPI) was done.

1

On June 4, 2008, Kidd said, he went to a classification hearing with Bowman, Danheim, Statham, and Warren. Officer Godwin had escorted Kidd to the hearing and was present as well. Kidd told the officers that Tippen had been harassing him, and they asked him if anything physical had happened to him. When Kidd said no, the officers told him that they could not act on threats alone, and that he should file a complaint after something did happen to him. Kidd testified that the officers did not take any precautions or act to separate him from Tippen.

Kidd stated that Godwin, the officer who had escorted him to the classification hearing, worked with Tippen. A couple of days after the hearing, Kidd said, Tippen came to his cell early in the morning and banged on the door. Tippen said that he knew that Kidd had been "snitching" and that he had a surprise for him. Later that day, Tippen was passing out food trays and opened the slot on Kidd's cell door. Kidd said that when the slots are opened, inmates generally look through it. When he did so, Tippen hit him in the face with the slot key, which is a metal bar about two to two and a half feet long. Kidd said that the blow knocked him backwards onto the floor. Tippen told him to "eat steel, you f*ing snitch" and closed the door slot.

Kidd said that he felt blood on his face and called out to Godwin, who was down on One Row, that he had been assaulted by Tippen and was injured, and needed to go to the medical department. When he first called out, he said, Godwin acknowledged him, but when he said that he had been assaulted and needed medical care, Godwin ignored him. When shift change came about thirty minutes later, Kidd said, the officers on the next shift took him to the infirmary, where he received medical care for his injuries.

Kidd complained that even though an offender protection investigation had been opened regarding his complaints against Tippen, the prison officials still kept him in the same housing area with Tippen. After free-world persons contacted TDCJ authorities on his behalf, he said, he was finally transferred to the Darrington Unit.

Kidd stated that he sued the unit wardens and the TDCJ upper echelon officials on a theory of supervisory liability, in that they had failed to train and supervise their subordinates. He

said that Quarterman, Livingston, and LeFlore had notice of the situation because of letters which he and other persons, including the ACLU and a prisoners rights organization from California, had written. He stated that the officers present at the June 4 meeting failed to take any action to protect him and in fact told him that "something physical" had to happen to him before they would do anything.

Kidd also sued former TDCJ officer David Larsen, explaining that although Larsen no longer worked for TDCJ, he was still involved. He said that he had received death threats from the Aryan Brotherhood prison gang in the form of written notes which made clear that Larsen was in close touch with the gang; one of these notes referred to the settlement in the prior case and stated that Larsen was not going to pay and that the gang was going to kill Kidd.

After the hearing, the Court dismissed the Defendants Brad Livingston, William Stevens, Nathaniel Quarterman, Larry LeFlore, Loyd Massey, Warden Baker, Dwayne Dewberry, and David Larsen. The remaining Defendants, Jimmy Bowman, James Danheim, Julian Godwin, Olin Statham, James Tippen, and Wendell Warren, were ordered to answer the lawsuit and have done so.

On January 31, 2011, the Defendants filed a motion for summary judgment. This motion argues that Kidd failed to exhaust his administrative remedies, that his claims for declaratory and injunctive relief are moot inasmuch as he is no longer at the Michael Unit, and that they are entitled to qualified immunity from claims for damages. Kidd has filed a response to this motion arguing that he did exhaust his administrative remedies and that his claims are not moot because his problems exist as a result of his confinement in TDCJ, not merely the Michael Unit.

Legal Standards and Analysis

General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a

genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075.

The fact that a non-movant failed to respond to a motion for summary judgment is not itself a basis for granting that motion; rather, the movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults, 76 F.3d at 656; *see also* Johnson v. Deep East Texas Regional Narcotics Trafficking

5

Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

Exhaustion of Administrative Remedies

The Defendants first argue that the lawsuit should be dismissed for failure to exhaust administrative remedies. Prisoners are required to exhaust available administrative remedies before filing suit. 28 U.S.C. §1997e(a); Jones v. Bock, 549 U.S. 199, 202 (2007); Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004). Proper exhaustion is required, meaning that the prisoner must not only pursue all available avenues of relief, but must also comply with all administrative deadlines and procedural rules. Woodford v. Ngo, 548 U.S. 81-89-95 (2006). The Fifth Circuit has interpreted this requirement to mean that mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners are required to exhaust administrative remedies properly. Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir. 2010), *citing* Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001) *and* Richardson v. Spurlock, 260 F.3d 495, 499 (5th Cir. 2001); *see also* Johnson v. Cheney, 313 Fed.Appx. 732, 2009 WL 614501 (5th Cir., March 11, 2009), *citing* Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003), *overruled by implication on other grounds by* Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910 (2007) (Fifth Circuit has "taken a strict approach to the exhaustion requirement").

In this case, Kidd is a prisoner in the Texas Department of Criminal Justice, Correctional Institutions Division, and so must use the grievance procedure provided by TDCJ. This procedure consists of a Step One grievance, which must be filed within 15 days of the complained-of incident, and a Step Two grievance, which must be filed within 10 days of receiving an adverse decision at Step One. Both steps of the grievance procedure must be completed for a grievance to be considered exhausted. Johnson, 385 F.3d at 515.

Furthermore, in order for an issue to be exhausted properly, it must be presented in a Step One grievance and then appealed to Step Two; inmates may not present new issues at the Step Two level, but must present their claims at both the Step One and Step Two levels. Randle v.

Woods, 299 Fed.Appx. 466, 2008 WL 4933754 (5th Cir., November 19, 2008), *citing* Woodford and Johnson.

In this case, the Defendants say that during the time period from April of 2008 until February of 2009, Kidd took three grievances to the Step Two level. These were grievance no.'s 2009052939, 2009052920, and 200916638.

Kidd's Step One grievance no. 2939 (last four digits only), which was signed on November 22, 2008, reads as follows:

> On 11-18-08, I spoke with Lt. Shead regarding my life and safety being in danger from other inmates (gangs) and prison staff (guards). I explained a problem to him about officer Tippen not feeding me my meals, and harassing me. I informed Lt. Shead that back in May of this year, I filed a complaint against Tippen regarding him not feeding, showering recreating, and for verbally abusing and threatening me.
>
> Once I spoke with prison officials (Major Barman, Capt. Danheim, and Lt. Statham), and related the abuse, they took no action as preventative measures to protect me from further abuse, since Tippen simply "denied the allegations." As a result, this escalated retaliation. Tippen assaulted me by hitting me in the fact with the metal food slot bar, causing injury and vision loss in my left eye. And even after that, prison officials still refuse to protect me from him, and he continued to abuse me.
>
> I explained to Lt. Shead that I am experiencing abuse from several prison guards, and many inmates, but fear to report the abuse due to the fact that it will endanger me, and the officials. I fear to give names with no promise of protections.

For relief, Kidd asked that he be transferred to an institution where he will be safe from "the persistent threat that follows me in TDCJ since an assault in 2003 by the former TDCJ guard David Larsen." The response to the grievance was as follows:

> The issues raised within this grievance were forwarded for investigation in compliance with the Safe Prison Program. On 11/16/08 Sgt. Boles completed an investigation about alleged offenders threatening you. On 11/21/08 you were reviewed by ASC [Administrative Segregation Committee] at which time there was no evidence to substantiate your allegations. Major Bowman attempted to interview you in regards to staff, however, you refused to cooperate with an investigation, therefore, no further action is warranted.

In the Step Two appeal of grievance no. 2939, Kidd states as follows:

> I continue to be abused by Officer Tippen, and he continues to harass and threaten me, and several other officers are retaliating on behalf of Tippen. I'm being threatened by inmates and prison gangs.

> I state that even when I do cooperate and give names of people who are threatening my life and safety, then the prison officials still refuse to take any action to protect me simply because the perpetrators "deny my allegations." Well of course people will deny that they threaten, assault, or harass me to keep themselves out of trouble.
>
> Furthermore, I did cooperate with Lt. Shead by giving him a death threat note, and cell numbers of many inmate who were harassing and threatening me. Lt. Shead told me that he could not do anything to protect me and that he was not going to take me home with him and baby-sit me. Therefore it is the officers who are refusing to cooperate with my safety needs.

The response to this grievance reads as follows:

> The response provided at the unit level adequately addressed your complaint. No new evidence or information was provided in your Step 2 appeal to warrant further review at this time. Your complaint was referred to Warden Dewberry, who chose no action warranted. No staff misconduct was noted. No action is warranted at this time.

In grievance no. 2920, also signed on November 22, 2008, Kidd states as follows:

> I had received a death threat note from a security threat group/gang, indicating that they were "acting" on behalf of a former TDCJ guard named David Larsen. The note stated that "they" were going to stab and kill me.
>
> I brought this matter to the attention of the prison officials - Warden Dewberry, Major Bowman, Lt. Statham, Lt. Shead, Sgt. Young, Sgt. Boles, Sgt. Caspar, and I requested a transfer to a safe environment where I'm not persistently being threatened, harassed, and assaulted by inmates and prison guards.
>
> On 11-21-08 I went before ad seg committee, and the above-named officials declined to act on behalf of my safety needs to avoid the substantial risk of serious harm to my life and safety.

The response to this grievance reads as follows:

> The issues raised in this grievance were forwarded for investigation in compliance with the Safe Prisons Program. On 11/16/08 Sgt. Boles completed an investigation about alleged offenders threatening you. On 11/21/08 you were reviewed by ASC [administrative segregation committee] at which time there was no evidence to substantiate your allegations. Major Bowman attempted to interview you in regards to staff, however, you refused to cooperate with an investigation; therefore, no further action is required.

On December 24, 2008, Kidd filed a Step Two appeal of this grievance, which reads as follows:

> First and foremost, I did cooperate with the investigation by turning over the death threat note to Lt. Shead. Simply because I did not know who had written or sent me the note does not justify prison officials taking no action to protect me, and by policy prison officials are to make every effort to prevent known threats to my safety. In this case, it was the prison officials who refused to cooperate on behalf of my safety need by taking no action at all.

8

>Additionally - Major Bowman did interview me on 11-21-08 and I expressed to him my deep concerns for my safety from other inmates and staff on this unit. Major Bowman told me that he could not promise me no [sic] protection from staff or other inmates even if I gave him names of the individuals threatening my safety. I told Major Bowman that I feared to give names if there was no promise of protection, and if the prison officials took no initial action to protect me, then it would only escalate the endangerment to my safety as it did with Officer Tippen when he assaulted me two days after I went to prison officials seeking protection from him. The prison officials refused to take any action or preventative measures in this case, and Tippen retaliated by assaulting me as a result of reporting his prior threats and harassment. This makes me extremely leery to give names as I did in the case with Tippen with no promise of protection. I am continually being harassed and threatened by Tippen, and other officers and inmates, and the prison officials still refuse to act to give me any level of protection even after I gave them a note threatening my life.

The response to this grievance appeal reads as follows:

> The response provided at the unit level adequately addressed your complaint. No new evidence or information was provided in your Step Two appeal to warrant further review at this time. Your complaint was referred to Warden Dewberry, who chose no action warranted. No staff misconduct was noted. No action is warranted at this time.

Grievance no. 6638 concerns the conditions of confinement at the Jester 4 Unit, which conditions are not a part of this lawsuit. In the grievance, which was signed on September 4, 2008, Kidd states as follows:

> On 9-3-08 Warden McLin was making a round check on A Pod, I stopped him at my cell to discuss a problem with him.
>
> I explained to Warden McLin that I had been moved from B-1 Pod to A-1 Pod the previous day, but that I was housed on B-1 Pod for two months prior to moving to A-1 Pod. During the two months on B-1 Pod, I was forced to live in a "stripped cell" with no amenities, cloths, no mattress or sheets, no property, no hygiene, and forced to sleep on a steel bunk with only one thin blanket. During this time I was denied recreation, access to the courts, denied to write or send out legal or personal letters and denied the right to file a grievance.
>
> I spoke to, and verbally complained to several people during and throughout the time I spent forced to live in a "stripped cell." All individuals including Ms. Ross, Ms. Bundy, Dr. Patel, Capt. Castro, Warden Hays, Warden McLin, and Major Bailey stated that I must live on B-1 Pod in a "stripped cell" with the only excuse that the prison was overcrowded and once a bed became open on A-1 Pod then I would be moved. They say that all inmates on B-1 Pod must live in "stripped cells" no matter what their status.
>
> I state that on or about 8-26-08 Mr. Livingston, Executive Director, TDCJ, Mr. Quarterman, Institutional Director, TDCJ, and Jackie Edwards, Regional Director, made a walk-through of B-1 Pod and viewed the living conditions.

The response to this grievance reads as follows:

> The offender was transferred off the unit on 9-24-08. You were housed according to your condition availability. If the appropriate housing was not available, you will be housed accordingly until it was available.

Kidd filed a Step Two appeal of this grievance on October 13, 2009, almost a year later. In this appeal, he states as follows:

> Today I received a grievance (step 1) back from the grievance department that I had filed almost a year ago. I don't know where this grievance has been, but the officer gave it to me a few minutes ago at mail call. Please accept and file/process this Step 2, because I am not at fault for late filing.
>
> I am dissatisfied because I was not given an answer as to why I was forced to live in a "stripped cell" for two months without a doctor's order. This is not the first time this has happened to me, and the last time I was at Jester 4, I spent 1 ½ months in a stripped cell without an order.

The response to this grievance appeal reads as follows:

> A review of the grievance and documentation was completed regarding the allegation of being placed in a stripped down cell for 2 months in 2008. The review reveals that you were admitted to Jester 4 on 7/16/08 for claiming you were suicidal at Hospital Galveston and refusing to come out of the dayroom and insertion of razor blades and foreign bodies into your penis. You were ordered into Seclusion due to the aggressive behavior displayed toward yourself and staff. On 7/23/09 you were released from Pod B-1 and refused to move into Pod A-1. Again you displayed your aggression toward staff and was [sic] placed in Seclusion while undergoing treatment through the Impulse Control Program from 8/7/2009 through 9/19/2009. Presently, you are assigned to the Jester 4 facility.

The Defendants note that while Kidd did file a grievance concerning the alleged assault by Tippen, this was grievance no. 20081558983. The response to this grievance reads as follows:

> This was referred to the warden's office for review and determination. An investigation was opened and completed by Lt. Marshall. Officer Tippen adamantly denies your allegations. Furthermore, this was referred through the Region II Office with coordination with the Office of the Inspector General. It was the determination of the OIG not to open a case.

The Defendants state that Kidd did not file a Step Two appeal of this grievance.

### Kidd's Response to the Motion for Summary Judgment

In his response to the motion for summary judgment, Kidd states first that when he went to the evidentiary hearing, Ginger Lively, the TDCJ Regional Administrator, stated that he had

10

exhausted his administrative remedies. Had he not done so, he says, the case would not have moved forward. In addition, Kidd states that he had previously filed this lawsuit and it was dismissed for failure to exhaust, and that after that occurred, he properly exhausted. Kidd points to grievance no. 2939 as exhausting his administrative remedies against all of the defendants except for Godwin, and that because Godwin has the same constitutional duty to protect Kidd as do all of the members of the administrative segregation committee, his mere presence at the committee hearing renders him as liable as all of the members of the committee.

Kidd states that while he did not name Godwin specifically in grievance no. 8983, he refers to the officer on One Row, to whom he yelled after the assault, indicating that this was Godwin but that he did not know the officer's name at the time. Kidd also attaches a copy of a Step Two appeal of grievance no. 8983, which he says is a carbon copy of a grievance appeal that he filed, but that this grievance was never returned to him. He says that he completed the grievance and placed it in the grievance box, which is all that he is responsible to do, and so he did his best to appeal the grievance, but the grievance department failed to process it.

Application of the Law to the Facts

None of the grievances which Kidd took to Step Two directly concern the alleged assault by Officer Tippen, or any of the events surrounding the alleged assault, from May and June of 2008. Grievance no. 2939 concerns a discussion which he had with Lt. Shead in November of 2008 regarding continuing problems which Kidd said that he was experiencing at that time. Although Kidd refers in the grievance to the alleged assault by Tippen six months earlier, this grievance concerns the alleged failure to protect him in November, not the assault in May.

This fact is underscored by the TDCJ requirement that grievances be filed within 15 days after the incident giving rise to the grievance. In Johnson v. Johnson, 385 F.3d at 519, the Fifth Circuit held that "we agree with the defendants that Johnson has not exhausted any claims that arise from events that occurred more than fifteen days before this grievance" [i.e. before the first properly filed grievance that went through both Step One and Step Two of the grievance procedure]. Kidd

11

cannot retroactively exhaust a claim by mentioning it in a grievance which concerns another issue, which grievance was filed five months after the first claim. Kidd's argument that grievance no. 2939 exhausted his administrative remedies is without merit.

Nor does grievance no. 2920 serve to exhaust Kidd's administrative remedies regarding the assault by Tippen or the surrounding events. Instead, this grievance complains of the failure to act by the administrative segregation committee in November of 2008. While Kidd does refer to the death threat note in his Step One and Step Two grievances, the only defendant he sues in his lawsuit over the note is Larsen, who has previously been dismissed from the lawsuit because of a lack of showing of state action. In addition, Kidd says that he received the note in June of 2008, some five months prior to his filing of the grievance which makes reference to the note. As the Fifth Circuit explained in Johnson, incidents which occurred more than 15 days prior to the filing of the first exhausted grievance cannot themselves be considered exhausted. Kidd cannot refer to five-month-old incidents while grieving another issue and thereby exhaust the older incidents as well. Thus, grievance no. 2920 did not serve to exhaust his administrative remedies.

Next, Kidd argues that at the evidentiary hearing, the TDCJ Regional Grievance Administrator, Ginger Lively, stated that he had exhausted his administrative remedies; he says that the case could not have gone forward had this not been the case. Kidd is incorrect that the case could not have gone forward without this testimony; the Fifth Circuit has held that exhaustion of administrative remedies is an affirmative defense which must be raised by the defendants, and *sua sponte* dismissals for failure to exhaust are improper unless such failure clearly appears on the face of the pleading. Carbe v. Lappin, 492 F.3d 325, 327 (5th Cir. 2007); Torn v. Mississippi Department of Corrections, 301 Fed.Appx. 386, 2008 WL 5155229 (5th Cir., December 9, 2008). The Court could not have dismissed the lawsuit *sua sponte* for failure to exhaust based on a TDCJ official's testimony at a Spears hearing, without a responsive pleading from the defendants.

Nor does Lively's testimony at the Spears hearing constitute a "waiver" of the exhaustion defense. In Randle v. Pratt, civil action no. 6:05cv454, 2007 WL 2329821 (E.D.Tex.,

12

August 10, 2007, *affirmed in part and reversed in part sub nom*. Randle v. Woods, 299 Fed.Appx. 466, 2008 WL 4933754 (5th Cir., November 19, 2008), the plaintiff argued that TDCJ Regional Grievance Coordinator Chip Satterwhite had testified at a Spears hearing that he, Randle, had exhausted administrative remedies. The district court concluded that this statement "does not constitute a legal waiver of the exhaustion defense, which was properly raised in the Defendant's motion for summary judgment." Although the Fifth Circuit reversed the district court's decision in other regards, the dismissal for failure to exhaust was upheld.

Similarly, Lively's testimony at the Spears hearing does not constitute a legal waiver of the exhaustion defense, which was properly raised in the Defendants' motion for summary judgment. Kidd's contention on this point is without merit.

Kidd attaches a purported copy of a Step Two appeal of grievance no. 8983, which he says that he tried to file by placing it in the grievance box, but that it apparently never was processed. The Defendants state that no appeal of grievance no. 8983 was ever filed.

The courts have held that conclusory allegations that a prisoner filed grievances which were not answered, or that the grievance process is otherwise "futile," are insufficient to evade the exhaustion requirement. *See* Willich v. Brownlow, civil action no. 6:08cv244, 2010 WL 297844 (E.D.Tex., January 19, 2010, no appeal taken) (rejecting conclusory allegation of inability to exhaust); Mentecki v. Corrections Corp. of America, 234 F.3d 1269 (6th Cir., October 27, 2000) (not selected for publication in the Federal Reporter) (available on WESTLAW at 2000 WL 1648127) (inmate who "merely makes a speculative and conclusory assertion that filing a grievance would be futile has not satisfied the exhaustion requirement of Section 1997e(a)"); *accord*, Penn v. Kastner, civil action no. 5:05cv202, 2007 WL 1051773 (E.D.Tex., April 4, 2007, no appeal taken) (inmate's conclusory assertion that "the grievance process is futile" does not set forth a valid basis upon which to excuse the exhaustion requirement); Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004) (unsupported allegations that grievances "must have been lost or misplaced" does not relieve inmate of the obligation to appeal claims to the next level once it becomes clear that a response to

the initial filing was not forthcoming). This is particularly true in the summary judgment context, where the Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, as has been done here, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little, 37 F.3d at 1075.

Other cases rendering similar holdings include Wiley v. Civigenics, civil action no. 5:07cv60, 2009 WL 260948 (E.D.Tex., February 3, 2009) (no appeal taken) (conclusory claim of inability to exhaust not sufficient to meet exhaustion requirement) *and* Nunez v. Goord, 172 F.Supp.2d 417, 428-29 (S.D.N.Y. 2001) (inmate's unsupported claims that his grievances were lost at the grievance office or destroyed by officers failed to excuse inmate from exhaustion requirement).

It should be noted that a similar rule exists outside of the correctional context as well. In Parham v. Carrier Corp., 9 F.3d 383, 391 (5th Cir. 1993), a wrongful discharge case, the Fifth Circuit held that to avoid the exhaustion requirement under a collective bargaining agreement, a former employee has the burden of producing some evidence that resort to available grievance procedures would in fact be futile. The Fifth Circuit expressly said that conclusory assertions or mere subjective belief, even if in good faith, would not suffice. In the present case, Kidd's bare and conclusory assertion that he filed a Step Two appeal of grievance no. 8983, which was not answered, despite his having filed numerous other Step One and Step Two grievances which were answered, is insufficient to overcome the competent summary judgment evidence that he failed to exhaust his administrative remedies. This contention is without merit.

Kidd refers in his complaint to a grievance which he filed on May 21, 2008, which is grievance no. 2008149508. This grievance sets forth Kidd's history and requests an out-of-state transfer. The response to the grievance is that an investigation was conducted and Kidd's allegations could not be sustained, and that the grievance would be forwarded to the Office of the Inspector General for informational purposes only, inasmuch as the only specific incident mentioned in the

grievance was from 2003. No Step Two appeal of this grievance was filed. Similarly, the answer to Kidd's Step One grievance no. 8983, which specifically referred to the assault by Tippen, was that the matter was referred to the Office of the Inspector General, who declined to open a case. No Step Two appeal was filed of this grievance.

In Aguirre v. Dyer, 233 Fed.Appx. 365, 2007 WL 1541327 (5th Cir., May 24, 2007), the Fifth Circuit held that the mere fact that a Step One grievance was referred to the Internal Affairs Division of TDCJ (now known as the Office of the Inspector General) did not vitiate the requirement that the inmate file a Step Two grievance to exhaust his state remedies. Similarly, in Castro v. Crawfoot, 102 Fed.Appx. 852, 2004 WL 1427106 (5th Cir., June 23, 2004), the response to the inmate's Step One grievance stated that the complaint had been mandatorily referred to the Internal Affairs Division and that if he was dissatisfied with the response to his grievance, he could submit a Step Two appeal. In the present case, the response to grievance no. 8983 said that Kidd's grievance had been referred to the Office of the Inspector General, which declined to open a case, and the response to grievance no. 9508 was that an investigation had failed to sustain Kidd's allegations. Nothing about either of these responses indicated that the filing of a Step Two grievance appeal would be futile or that Kidd had received all the relief to which he was entitled.[1] He has not shown that an exception to the exhaustion requirement exists or that he should be otherwise excused from this requirement.

Similarly, in grievance no. 9508, which sought a transfer under the Interstate Corrections Compact, Kidd was advised that an investigation had been undertaken which did not substantiate his allegations. Kidd had potential relief available in a Step Two appeal, in that he could

---

[1] Rosa v. Littles, 336 Fed.Appx. 424, 2009 WL 1766552 (5th Cir., June 23, 2009), is distinguishable because in that case, the prisoner was told that the Office of the Inspector General had opened a case, not merely that the grievance had been referred to OIG, and that all further correspondence should be with OIG. In that case, the Fifth Circuit held that the prisoner had received all possible relief at the Step One level and so no Step Two grievance was required. Kidd plainly did not receive all of the relief to which he was entitled through the responses to his Step One grievances, and so he was required to go through Step Two in order to exhaust his administrative remedies.

15

have appealed the denial of the transfer which he requested, or he could have appealed the determination by the investigator that his allegations could not be substantiated. Hence, the failure to file a Step Two appeal of grievance no.'s 8983 or 9508 render those grievances unexhausted. Kidd has not shown that the requirement of exhaustion of administrative remedies has been satisfied, nor that he should be excused from this requirement.

Summary

Kidd complains of deliberate indifference to his safety through the failure to protect him after his transfer to the Michael Unit in March of 2008, which deliberate indifference culminated in an alleged assault by Officer Tippen on June 6, 2008. However, Kidd did not pursue any of his complaints regarding these events through both steps of the TDCJ grievance procedures. Two of the three grievances during this time period which he took through Step Two involved complaints arising in November of 2008, and the third involved the conditions of confinement at the Jester 4 Unit, which conditions are not connected with any claims in this lawsuit. There is no record of Kidd pursuing any grievance through both steps of the grievance procedure raising the claims which now form the basis of the present lawsuit, and his conclusory assertion that he filed a Step Two appeal of grievance no. 8983 is not itself sufficient to show exhaustion. Thus, Kidd failed to exhaust his administrative remedies, and the Defendants' motion for summary judgment should be granted on this basis.

In Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated in part on other grounds by* Jones v. Bock. the Fifth Circuit stated as follows:

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, Underwood sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing Underwood's action with prejudice for purposes of proceeding IFP.

Because Kidd did not properly exhaust his administrative remedies on his complaint, it likewise should be dismissed with prejudice for purposes of proceeding *in forma pauperis*. *See also* Wiley v. McKellar, 167 Fed.Appx. 385, 2006 WL 189941 (5th Cir., January 26, 2006). It is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 75) be and hereby is GRANTED on the issue of failure to exhaust administrative remedies. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice for purposes of proceeding *in forma pauperis*. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

**So ORDERED and SIGNED this 11th day of April, 2011.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE